CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

MAR 25 2009

JOHN F. CORCORAN, CLERK
BY: /s/
    DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| STEVEN L. FRETWELL, | ) | Case No. 5:08cv00012 |
| | ) | |
| *Plaintiff* | ) | REPORT AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: Hon. James G. Welsh |
| Commissioner of Social Security, | ) | U. S. Magistrate Judge |
| | ) | |
| *Defendant* | ) | |

The plaintiff, Steven L. Fretwell, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ("the agency") denying his claims for a period of disability insurance benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423 and 42 U.S.C. §§ 1381 *et seq.*, respectively. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The Commissioner's Answer was filed on September 24, 2008 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered September 29, 2008, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Contending that the Commissioner's final decision was not based on substantial evidence, the plaintiff argues that the ALJ erred in considering his subjective complaints, erred in considering

his treating physician's opinions, and erred in failing to obtain vocational testimony. In his response, the Commissioner argues that the ALJ's credibility and impairment findings are supported by substantial evidence and that the plaintiff is not disabled by application of the Medical-Vocational Guidelines ("the Grids"), 20 C.F.R. Part 404, Subpart P, Appx.2. Each party has moved for summary judgment; no written request was made for oral argument,[1] and the case is now before the undersigned for a report and recommended disposition.

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's decision denying benefits.

## I.     Standard of Review

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB or to SSI. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (*quoting Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). This standard of

---

[1] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3d at 589). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

II.     Administrative History

The record shows that plaintiff protectively filed his current applications [2] on July 26, 2005, alleging a disability beginning April 6, 2005 due to "spinal degenerative disease." (R.19,64-82,189,192-233,448-450.) His claims were denied both initially and on reconsideration, and an administrative hearing on his applications was held on October 26, 2006 before an ALJ. (R.19,32-35,39-58,463-498.) The plaintiff was present, testified, and was represented by counsel. (R.36-37,463,467 *et seq.*)

Utilizing the agency's standard sequential evaluation process, the plaintiff's claims were

---

[2] Alleging an October 1, 2003 disability onset date, the plaintiff filed earlier applications for benefits under Titles II and XVI of the Social Security Act. These claims were denied on September 9, 2004; the plaintiff did not seek administrative reconsideration; they are, therefore, administratively final and not subject to reopening. (R,19,38, 60-62,172-188.)

3

denied by written administrative decision dated January 23, 2007. (R.19-28.) *Inter alia*, the ALJ concluded that the plaintiff had "the following severe impairments: degenerative disc disease of the cervical and lumbar spine and obesity." (R.22-23.) The ALJ next evaluated the plaintiff's impairments under the applicable criteria of the Listing of Impairments and determined that impairments neither met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1. And based on his review of the entire record the ALJ concluded that the plaintiff was unable to perform any of his past relevant work on a regular and sustained basis, but he retained the residual functional capacity to perform a full range of sedentary work. (R.23-27.)

After the ALJ's issuance of his adverse decision, the plaintiff made a timely request for Appeals Council review. (R.10-15.) His request was denied (R.7-9), and the decision of the ALJ now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

### III. Facts and Analysis

The record in this case shows that the plaintiff was born in 1967 and was thirty-nine years of age [3] at the time of the administrative decision. (R.60,64,189.) Although he stated in the Disability Report filed as part of his applications that he had attended school through the eleventh grade (R.197), his school records show that he completed the tenth grade (R.236-244). Despite this documentation of his tenth grade education, at the hearing the plaintiff nevertheless told the ALJ that

---

[3] At this age the plaintiff is classified as a *"younger person,"* and pursuant to the agency's regulations age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.920(c).

4

he quit school before completing the tenth grade. (R.27,469-470.) His past relevant work was primarily as an automobile mechanic; however, within the relevant time period he also worked as a construction laborer, crane operator, and small engine repairman. (R.26,193-194,199-207.) As noted by the ALJ in his decision, the plaintiff has continued to work as an automobile mechanic [4] on a part-time basis throughout the period since his alleged onset date and the date of the ALJ's decision. (R.20-22,283-284,334,471-473,493-494.) Considering the plaintiff's age, education, daily activities (including his continuing work activity), and the "minimal objective" medical findings, the ALJ concluded that the plaintiff retained the functional ability to perform a full range of sedentary work. (R.22-28). *See* 20 C.F.R. Part 404, Subpart P, Appx. 2. Given this adverse disability determination, the ALJ deferred a determination as to whether the plaintiff's continuing part-time work constituted substantial gainful activity. [5] (R.84-171,208-209,283-284,470-474.)

The plaintiff's medical records show that he is obese. [6] He has degenerative disc disease of the cervical and lumbar spine, along with an attendant radiculopathy. (R.290-294,309-310,312,316-317,319-322,330, 334-337,339-364,438,440,479.) He underwent successful C4-5 and C5-6 diskectomies and fusions in September 2003. (R.294-306,334-335,336-352,477-478.) When he was subsequently released to return to full-time work by Dr. Christopher Shaffrey, his treating

---

[4] As described by the plaintiff and as generally performed, this work is performed at a medium exertional level. (R.26.)

[5] Having determined that the plaintiff retained the functional ability to perform sedentary work through the decision date, the ALJ "reserved" consideration of whether the plaintiff's earnings exceeded the minimum level necessary to constitute substantial gainful employment. (R.20-22.) *See* 20 C.F.R. § 404.1572 and § 416.972.

[6] He is 6' 1" tall, and during the relevant time period his weight varied between 295 and 307 pounds. (R.22, 192,331,438,439,441,445,466.)

5

neurosurgeon at University of Virginia Medical Center ("UVaMC"), the plaintiff's numbness and loss of strength in his hands had improved significantly; his balance was normal, and he denied having any residual pain. (R.345-348.) However, the plaintiff reported that heavy vibrations or the repetitive movement of his head either side-to-side or up-and-down caused a increase in his pain and discomfort. (R.345.) Several month later, after reporting that he was experiencing leg numbness and erectile dysfunction, a lumbar MRI in May 2004 demonstrated moderate disc disease at L4-5 and L5-S1. (R.341-343,359-360.) Due principally to the plaintiff's "significant size and weight," Dr. Shaffrey recommended epidural steroid injections instead of surgical intervention. (R.339-340.)

Although the plaintiff reported being depressed, this self-reported condition required no hospitalization, no counseling, and no treatment by a mental health professional. Moreover, based on a consultive psychological assessment in October 2005 (R.372-376), Dr. Joseph Cianciolo concluded that the plaintiff's ability to perform work-related activities was not impaired due to any limitation in mental functioning. (R.374.) Based on their separate reviews of the records, two state agency psychologist's similarly concluded that the plaintiff's depressive symptoms were not "severe." [7] (R.386-398.)

Both his obesity and his spinal condition were determined by the ALJ to be "severe" conditions limiting the plaintiff's mobility and his ability to lift and carry heavy objects. (R.23.,477-

---

[7] Quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. § 404.1520(c).

6

481) Consistent with the state agency reviews and the consultive psychological assessments, the ALJ concluded that the plaintiff's depressive symptoms did not result in any significant non-exertional functional limitations. (R.23.)

Copies of the office notes and record of Dr. Samuel Hostetter show that the plaintiff was seen on June 1, 2001 for a complaint of low back pain and was not seen again by his primary care physician for two years. (.310-312.) When he returned in 2003, he reported experiencing finger cramping, forearm and hand pain, and increased back pain. (*Id.*) When these complaints persisted, in early September 2003 Dr. Hostetter referred the plaintiff to Dr. Shaffrey at UVaMC for treatment of apparent cervical disc disease. (R.290,307-308.)

After not seeing his primary care physician for more than one year, the plaintiff sought treatment from Dr. Hostetter on four occasions during 2005. In January the plaintiff sought treatment for a "probable viral illness." (R.446.) In March he sought treatment for complaints of intermittent lightheadedness and some nasal congestion. (R.331,441.) In June the plaintiff complained to Dr. Hostetter of losing feeling in his legs, and he was once again referred to Dr. Shaffrey at UVaMC. (R.330-331,440; *see also* R.335-336,353-356.) And in September he was seen with complaints dizzy spells, a stuffy nose and cold symptoms. (R.437-439.) At the time of this last 2005 office visit, the plaintiff also brought "some paperwork [to be filled-out] for his lawyer." (R.438.)

Reflecting the plaintiff's contention that he was functionally limited to less-than-sedentary

7

work activity due to degenerative disc disease, leg numbness, "wide spread pain," and depression, Dr. Hostetter reported that the plaintiff lacked the residual functional capacity to sit, stand or walk for any sustained period of time, that he lacked the ability to perform work requiring him to lift, carry, handle, reach, or on any repetitive basis, and that he was not capable of performing even a low stress job. (R367-271.)

Not only is this assessment inconsistent with the successful nature Dr. Shaffrey's cervical disc surgery in the Fall of 2003 (R.291-294,342-348), it does not appear to be based on any treatment notes, clinical evaluations, or objective test results. *See* R.307-322,330-333,436-447. Likewise, it is inconsistent with the moderate lumbar stenosis and attendant degenerative lumbar disc disease demonstrated by unvaried radiographic studies in May 2004 and in July 2005 at UVaMC. (R.339-341,359-360,355-356.) Additionally, it is significantly inconsistent with multiple state agency physical and mental assessments [8] and with the consultive psychological assessment of Dr. Joseph Cianciolo. [9] R.323-329,379-385,386-398,372-376.) And it is also inconsistent with the plaintiff's physical condition at the time of a May 2006 emergency room visit for treatment of a genital abscess. (R.409-432.) At that time, he was "well-appearing" and "in no distress;" he reported having no headaches, and after treatment he was released with only the restriction that he avoid "strenuous

---

[8] Based on their separate reviews of the record, state agency physicians in September 2004, September 2005 and in April 20, 2006 all concluded that the plaintiff's obesity and his degenerative disc disease were not totally disabling, either singularly or in combination, and that he retained the ability to perform at least sedentary work. (R.323-329,379-385.) Similarly, state agency psychologist concluded in November 2005 and again in April 2006 that the plaintiff's depressive symptoms were only "mild," had required no mental health treatment, and had not interfered with his then current work activities. (R.386-398.)

[9] Based on his testing results and his clinical assessment, Dr. Cianciolo concluded *inter alia* that the plaintiff "might experience only minor difficulty performing detailed and complex tasks." (R.374.)

8

activity." (R.411,421.)

## A.

In his decision the ALJ concluded that the plaintiff's testimony concerning the intensity, persistence and adverse functional impact of his medical condition were "not entirely credible." (R.25.) As the plaintiff acknowledges in his brief, the ALJ predicated this conclusion on what he assessed to have been the plaintiff's good response to the 2003 cervical surgery, the "relatively conservative" treatment received by the plaintiff for his low back condition, his significant continuing work activity, and his daily living activities (R.25-26).

Despite this acknowledgment, the plaintiff argues on appeal that this assessment by the ALJ was not based on substantial evidence. It is his contention that the ALJ "ignore[d] the objective results" of the May 2004 lumbar MRI, [10] "refuse[d]" to acknowledged the plaintiff's self-reported activity limitations, [11] and only made "selective" use of the medical record.

On review, each of these contentions is without merit. The ALJ specifically recognized in his decision that the plaintiff had been diagnosed by Dr. Shaffrey to have degenerative lumbar disc

---

[10] This MRI demonstrated degenerative lumbar disc disease and disc bulge at L4/5 with "mild to moderate" central canal stenosis and the same condition with a "minimal disc bulge" at L5/S1. (R.340-341.)

[11] *Inter alia*, the plaintiff claimed to have ongoing balance problems which required him to have assistance with dressing, daily migraine headaches, problems moving his head, and chronic pain and numbness which prevented him from mowing the grass or assisting with other household chores, which interfered with his ability to sleep, and which prevented him from maintaining a regular work schedule. (R.249,252-259,260-261,478-492.)

9

disease and associated pain (R.24), that steroid al injections did not provide the plaintiff with any long-term pain relief (R.24-25), that standing exacerbated his back pain (R.24), and as a consequence that he was functionally limited to sedentary work (R.26). Likewise, he specifically recognized the full scope of the plaintiff's subjective complaints, but concluded that they were "not entirely credible." (R.25.) Contrary to the plaintiff's contention, the ALJ's decision also contains and fair and adequate summary of the medical evidence.

### B.

The plaintiff's second contention on appeal is that the ALJ erred in failing to give controlling weight to certain treating source opinions, including those of Dr. Hostetter (the plaintiff's primary care physician) and Dr. Shaffrey (the plaintiff's treating neurosurgeon). Based on his review of the evidence, the ALJ concluded that Dr. Hostetter's functional assessment (R.367-371) should be given only "minimal weight," and in support of this finding reasonably observed that it was contrary to the plaintiff ongoing work activity as an automobile mechanic, contrary to the plaintiff's reported daily activities, contrary to the "minimal findings on examination," contrary to the findings of the consulting psychologist, and contrary to the conclusions of each of the state agency reviewers (R.26.)

Pursuant to 20 C.F.R. § 404.1527(d) and § 416.927(d), it is the ALJ's obligation to give controlling weight to a treating source's opinion only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. The functional assessment of Dr. Hostetter fails to meet either prong

10

of this regulatory criterion, and it was, therefore, decisionally appropriate for the ALJ to have discounted it as the Commissioner contends in his brief. Simply put, Dr. Hostetter's functional assessment in this case is both inherently inconsistent and inconsistent with the medical record as a whole.

In his brief, the plaintiff also places significant reliance on what he contends is Dr. Shaffrey's "support" of his disability claim. This reliance is also misplaced. Specifically, the plaintiff argues that Dr. Shaffrey's opinion that degenerative lumbar disc disease surgery would not enable him to return to work as a mechanic, "especially considering the demands" of this occupation. (R.338-339). This opinion, however, in no way equates with the agency's definition of disability; pursuant to which, an individual of the plaintiff's age and with his education should be able to adjust without difficulty to less physically demanding work. 20 C.F.R. § 404.1520 and 20 C.F.R., Part 404, Subpart P, Appx. 2.

### C.

Lastly, the plaintiff objects on appeal to the ALJ's decisional reliance on the Grids to determine that jobs exist in the national economy that he could perform. [12] Basically it is his contention that his chronic pain, depression, headaches, vision and balance problems, and extremity

---

[12] The *Grids* "consist of a matrix of the four factors identified by Congress — physical ability, age, education, and work experience. . . . [that] set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled." *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983).

11

numbness are non-exertional limitations which make application of the Grids *per se* inapposite. In response, the Commissioner argues that application of the Grids was appropriate in this case because the ALJ found that the plaintiff retained the functional ability to perform a full range of sedentary work and had no non-exertional limitations which would preclude their use at this exertional level.

In advancing this contention on appeal, the plaintiff is correct in arguing the general proposition that "reliance on the grids is precluded where the claimant suffers from a non-exertional impairment." *Smith v. Schweiker*, 719 F.2$^d$ 723, 725 (4th Cir. 1984) (internal quotation marks omitted). However, "not every such limitation or associated malady rises to the level of a non-exertional impairment, so as to preclude reliance on the Grids." *Walker v. Bowen*, 889 F.2$^d$ 47, 49 (4th Cir. 1989). "The proper inquiry . . . is whether a given non-exertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." *Smith v. Schweiker*, 719 F.2$^d$ at 725. "If the condition has that effect, it is properly viewed as a non-exertional impairment, thereby precluding reliance on the Grids." *Id.* (internal quotation marks omitted). On the other hand, if the condition does not have that effect, the ALJ may properly rely on the Grids to sustain the burden of proving the existence of jobs the plaintiff can perform. *Hammond v. Heckler*, 765 F.2$^d$ 424, 425-26 (4th Cir. 1985); *Smith*, 719 F.2$^d$ at 725.

In the instant case, the ALJ found that application of the Grids was proper, because the plaintiff maintained, irrespective of any non-exertional limitations, the functional capacity to perform the demands of a full range of sedentary work. (R.27.) Given the significant work activity the plaintiff was continuing to perform at a medium level of exertion, his good response to the cervical

12

Case 5:08-cv-00012-SGW-JGW    Document 19    Filed 03/25/09    Page 12 of 15    Pageid#: 75

surgery in 2003, his reported ability to sit most of each day (R.175), and the minimal objective finding, the record unquestionably contains substantial evidence supporting the ALJ's conclusion that the plaintiff does not have the degree of pain, depression, or other non-exertional limitation which would impair in any meaningful way his ability to perform sedentary work. Therefore, the ALJ properly applied the Grids in this case to ascertain that a significant number of jobs existed in the national economy that the plaintiff could perform.

### D.

As set forth in detail in Section I above, it is not the province of the court to make the disability determination. Its role is limited to determining whether the Commissioner's final decision is supported by substantial evidence. In this case, substantial evidence supports that decision. The recommendation that the Commissioner's decision be affirmed is not intended to suggest in any way that the plaintiff is free of pain or does not have both physical and mental impairments. The objective medical evidence, however, simply fails to demonstrate the existence of a condition that could be reasonably expected to result in total disability within the meaning of the Social Security Act. Moreover, the administrative record in this case demonstrates that the plaintiff's claims and the evidence, both objective and subjective, were properly considered and were fully and fairly assessed.

**IV. Proposed Findings of Fact**

13

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. All facets of the Commissioner's final decision are supported by substantial evidence;

2. The plaintiff's subjective complaints were properly considered in accordance with the applicable agency regulations, including 20 C.F.R. § 404,1529 and § 416,929;

3. The treating source opinions of Drs. Hostetter and Shaffrey were each considered in accordance with the applicable agency regulations and rulings, including SSR 96-2p and 20 C.F.R. § 404.1527 and § 416.927;

4. The ALJ properly applied the Grids (20 C.F.R. Part 404, Subpart P, Appx. 2) to ascertain that a significant number of jobs existed in the national economy that the plaintiff could perform;

5. The ALJ did not err in his review of the plaintiff's physical impairments and associated functional limitations;

6. The ALJ did not err in his review of the plaintiff's mental health impairments and associated functional limitations;

7. Substantial evidence supports the finding that through the date the ALJ's decision, the plaintiff retained the functional ability to perform a full range of sedentary work;

8. Given the adverse disability determination, the ALJ properly deferred a determination as to whether the plaintiff's continuing part-time work activity constituted substantial gainful activity;

9. The plaintiff has not met his burden of proving his disability on or before the date of the ALJ's decision; and

10. The final decision of the Commissioner should be affirmed.

### V.  Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING

the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the defendant, DENYING plaintiff's claim, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VI.     Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 25th day of March 2009.

/s/ *James G. Welsh*
United States Magistrate Judge